**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| AUUE, INC. | : | No. 28 WAP 2022 |
| | : | |
| v. | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| BOROUGH OF JEFFERSON HILLS | : | August 9, 2021, at No. 871 CD 2020, |
| ZONING HEARING BOARD AND | : | Reversing the Order of the Court of |
| BOROUGH OF JEFFERSON HILLS AND | : | Common Pleas of Allegheny County |
| 68 RESIDENTS OF JEFFERSON HILLS | : | entered August 10, 2020, at |
| | : | No. SA 19-000748 |
| | : | |
| APPEAL OF: RESIDENTS OF | : | ARGUED: October 17, 2023 |
| JEFFERSON HILLS | : | |

**OPINION**

**JUSTICE BROBSON**                                  **DECIDED: JULY 17, 2024**

The Pennsylvania Municipalities Planning Code (MPC)[1] grants local municipalities the power, *inter alia*, to "enact, amend[,] and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of [the MPC]." Section 601 of the MPC, 53 P.S. § 10601. Pursuant to that authority, the Borough of Jefferson Hills (Borough) enacted its Zoning Ordinance (Ordinance) for the stated purpose of "promoting and protecting the public health, safety, comfort, convenience, prosperity and other aspects of the general welfare of the Borough." (Reproduced Record (R.R.) at 55a.) Section 1201.1(a) of the Borough's Ordinance tasks the Borough's zoning officer (Zoning Officer) with the responsibility, *inter alia*, to "enforce the provisions of [the] Ordinance" and "issue permits only for construction and uses which are in accordance with the regulations of [the] Ordinance and other applicable ordinances as may be subsequently

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

amended." (*Id.* at 243a.) Section 1201.2 of the Borough's Ordinance reiterates that the "Ordinance shall be enforced by the Zoning Officer" and further provides that "[n]o permit of any kind as provided for in [the] Ordinance shall be granted for any purpose except in compliance with the provisions of [the] Ordinance." (*Id.* at 244a.) Section 614 of the MPC similarly provides that "[t]he [Borough's] [Z]oning [O]fficer shall administer the . . . [O]rdinance in accordance with its literal terms[] and shall not have the power to permit any construction or any use or change of use which does not conform to the . . . [O]rdinance." 53 P.S. § 10614. Jurisdiction to hear and render final adjudications in appeals from decisions made by the Borough's Zoning Officer, including a decision granting or denying a zoning permit, lies exclusively with the Borough's Zoning Hearing Board (ZHB). *See* Section 909.1(a)(3) of the MPC, 53 P.S. § 10909.1(a)(3); Section 1201.1(b) of the Ordinance.

In this appeal by allowance, we must decide whether the Borough's Zoning Officer had the authority under the MPC and the Borough's Ordinance to issue a "use" permit— *i.e.*, a zoning permit that simply recognizes that a proposed use is allowed by right in a particular zoning district—to Appellee AUUE, Inc. (AUUE),[2] or whether, before issuing that permit, the Zoning Officer was required to ensure that AUUE's zoning permit application (Zoning Application) complied with all relevant provisions of the Ordinance. Stated another way, we must determine whether the ZHB had the power to overturn the Zoning Officer's issuance of a use permit to AUUE due to certain violations of or failures to comply with the Ordinance or whether the ZHB was required to confine its review of the Zoning Officer's decision to the question of whether AUUE's desired/intended use is permitted by right in the subject zoning district. For the reasons that follow, we hold that

---

[2] AUUE is a Pennsylvania non-profit corporation and wholly owned subsidiary of the University of Pittsburgh Medical Center (UPMC).

the Zoning Officer had the authority to issue a use permit to AUUE, even though, on its face, the Zoning Application may have failed to comply with all relevant provisions of the Ordinance. We further hold that the ZHB was thereafter required to limit its review of the Zoning Officer's decision to the question of whether AUUE's desired/intended use was allowed by right in the relevant zoning district; the ZHB was not permitted to overturn the Zoning Officer's decision simply because the Zoning Application may have failed to comply with all relevant provisions of the Ordinance. Because the Commonwealth Court reached these same conclusions, we affirm the order of that court.

## I. BACKGROUND

The relevant facts, which the parties do not appear to dispute, are as follows. AUUE is the owner of five contiguous parcels of land (Property) located at the corner of Clairton Boulevard (State Route 51) and Elliot Road in the Borough. Although one deed conveyed to AUUE four of those five parcels and described those parcels in a single legal description set forth in that deed, the Ordinance treats all five parcels as separate lots. Lot 660-L-67, also referred to as the Elliot Road Lot, is located partially within the Office Park District (O-P District) and partially within the Highway Commercial District (C-1 District). Lot 767-D-375, also referred to as the Lower Practice T Lot, is located entirely within the O-P District. Lot 660-S-40, also referred to as the Split Lot, is located partially within the O-P District and partially within the Residential-Agriculture District (R-1 District). Lot 767-G-200, also referred to as the Upper Practice T Lot, and Lot 767-H-14, also referred to as the Practice T Drive Lot, are located entirely within the R-1 District. Article 700 of the Ordinance governs the use and development of property located within the O-P District. Relevantly, Section 701.1(a)(1) of the Ordinance permits

business or professional offices,[3] hospitals,[4] medical centers,[5] and medical clinics[6] as principal uses by right in the O-P District. Additionally, Section 701.1(a)(2) of the Ordinance permits accessory buildings and uses that are customarily incidental to those uses authorized in the O-P District as accessory uses by right in the O-P District.

On August 27, 2018, AUUE filed its Zoning Application with the Borough for the proposed development of UPMC South, a "[m]edical [c]enter comprised of a [h]ospital, [a] [m]edical [c]linic, [m]edical [p]rofessional [o]ffices, and a [h]elipad as an [a]ccessory [u]se." (R.R. at 408a.) Although it contained the heading/description "Application for Temporary or Final Zoning Approval for Occupancy and Use [a]nd Certificate of Use and Occupancy," AUUE made clear that the Zoning Application was "only for zoning approval and not for occupancy." (*Id.* at 409a.) The Zoning Application identified all five parcels of land—*i.e.*, Lots 767-G-200, 767-D-375, 767-H-14, 660-L-67, and 660-S-40—but listed

---

[3] Section 102.2 of the Ordinance defines a "professional office" as "[a]ny office of recognized professions such as doctors, lawyers, architects, engineers, real estate brokers, insurance agents, and others who, through training, are qualified to perform services of a professional nature." (R.R. at 75a.)

[4] Section 102.2 of the Ordinance defines a "hospital" as "[a]n establishment which has an organized medical staff and provides equipment and services primarily for inpatient care to persons who require definitive diagnosis or treatment, or both, for injury, illness, pregnancy or other disability, but not including narcotics addiction or those found to be criminally insane." (R.R. at 70a.)

[5] Section 102.2 of the Ordinance defines a "medical center" as "[a] development comprised of two (2) or more of the following uses: medical clinic, medical professional offices, medical research facility, nursing home or hospital." (R.R. at 72a.)

[6] Section 102.2 of the Ordinance defines a "medical clinic" as "[a]ny establishment, including mobile diagnostic units, where human patients receive medical, dental, chiropractic, psychological and surgical diagnosis, treatment and counseling under the care of a group of licensed medical doctors and dentists and their supporting staff, where said patients are not provided with board or room or kept overnight on the premises." (R.R. at 72a.)

only the O-P District as the "current zoning classification" for the Property.[7] (*Id.* at 408a.) AUUE attached to the Zoning Application its proposed plans for UPMC South, which, according to the ZHB, demonstrated: (1) the medical center, the only principal use, would be situated entirely on the portion of Lot 660-L-67 located within the O-P District; (2) the helipad, as an accessory use, would be situated on Lot 660-L-67; (3) Lot 660-S-40 would contain a staff parking lot, but it is unclear whether that parking lot would be situated entirely within the portion of Lot 660-S-40 located in the O-P District;[8] (4) Lot 767-D-375 would contain both a parking lot and a gated access road to connect into Practice T Drive; and (5) while there would be no development on Lot 767-G-200 or Lot 767-H-14, Practice T Drive crosses over both lots and, therefore, "could be used as an access road with a connection to the [g]ated [a]ccess [road that] leads to the staff parking lot." (ZHB's Decision at 3-4.)

On October 1, 2018, after initially requesting an extension to respond to the Zoning Application, the Zoning Officer requested that AUUE provide certain "corrections, clarifications[,] or additional information" relative to its proposed development of UPMC

---

[7] The ZHB, however, was not concerned about AUUE's failure to identify the zoning classification for each of the five lots on its Zoning Application. The ZHB explained:

> Although . . . it would have been more advisable for [AUUE] to list the zoning classification for each of the [l]ots on the [Zoning] [A]pplication, . . . this did not make the application defection [sic] on its face. It was still clear from the application, that [AUUE] was only requesting the [p]ermit for properties in the O-P [District] even though some of these properties, or portions thereof, are located in other [z]oning [d]istricts.

(ZHB's Decision at 13.)

[8] As to the uncertainty regarding Lot 660-S-40 and the staff parking lot, although AUUE's proposed plans suggest that the staff parking lot would be situated entirely within the O-P District, the boundary line between the portion of Lot 660-S-40 located in the O-P District and the portion of Lot 660-S-40 located in the R-1 District is not known, and, therefore, it is possible that the staff parking lot would either extend into the R-1 District or would not be located the required distance from the R-1 District.

South, including, but not limited to, documentation explaining how the helipad qualifies as an accessory use and documentation as to the parking count. (R.R. at 418a-19a.) Subsequent thereto, on October 11, 2018, AUUE provided the Zoning Officer with a position statement and revised plans containing some, but not all, of the requested information. As a result, on October 19, 2018, the Borough's planning consultant informed AUUE that it needed to provide the Borough with the "proposed parking count documentation" so that the Borough could "determine the minimum number of parking spaces required" for the project. (*Id.* at 440a.) AUUE submitted revised plans containing such information to the Zoning Officer on October 25, 2018.

By letter dated October 31, 2018, the Borough's Zoning Officer approved AUUE's Zoning Application, subject to certain enumerated conditions. Specifically, the Zoning Officer's letter provided:

> This approval applies to ZONING ONLY and shall not relieve [AUUE] from obtaining other such approvals and permits as may be required by [the] Ordinance including, but not limited to, those identified below. Further, the issuance of this permit is conditioned specifically on the following:
>
> - The MEDICAL CENTER use (comprised of hospital, medical clinic, and medical professional offices), with a helipad as an accessory use, is approved for the parcels indicated on the [zoning] permit, within the O-P . . . District.
>
> - No development activity may occur on the site until [AUUE] secures approval for land development from the Borough.
>
> - Issuance of this zoning permit does not relieve [AUUE] of any requirements of the . . . Ordinance as part of the land development application review process required by the Borough['s] Subdivision and Land Development Ordinance [(SALDO)].
>
> - No grading or earthwork activity may occur on the site until [AUUE] secures a grading permit or land development approval from the Borough.
>
> - No building construction may occur until [AUUE] secures a building permit from the Borough.

- This [zoning] permit shall expire twelve months from the date of issuance as indicated by the date of this letter, above.

(*Id.* at 445a-46a.)  The Zoning Officer described the zoning permit that he had issued to AUUE for the Property as a "[u]se [p]ermit" and not a "[f]ull [z]oning [p]ermit" and indicated that "additional zoning issues . . . would need to be resolved at a future date as part of the land development process."  (ZHB's Decision at 6.)  In other words, although he acknowledged that AUUE's Zoning Application did not fully comply with the Ordinance's requirements, the Zoning Officer did not consider any violations of the Ordinance when he issued the zoning permit to AUUE and, instead, only considered whether AUUE's proposed medical center was a use permitted by right in the O-P District in which the Property is located.

Certain Residents of Jefferson Hills (Residents), who are the appellants before this Court and who live adjacent to or near the Property, appealed the Zoning Officer's decision to the ZHB.  On October 24, 2019, following numerous hearings, the ZHB granted the Residents' appeal, thereby overturning the Zoning Officer's decision.  In so doing, the ZHB first concluded that AUUE's desired/intended use for the Property—*i.e.,* the medical center to be known as UPMC South—was not permitted under Section 701.1(a)(1) of the Ordinance.  Although it acknowledged that Section 701.1(a)(1) identifies both a medical center and a hospital as principal uses permitted by right in the O-P District, the ZHB explained that it could not view Section 701.1(a)(1) in "isolation." (*Id.* at 10.)  The ZHB further explained that, when Section 701.1(a)(1) is construed with Article 700 of the Ordinance's Statement of Intent[9] and the relevant community

---

[9] Article 700 of the Ordinance's Statement of Intent provides:

> In addition to the general goals listed in the preamble, the districts established in these regulations are intended to achieve the following:

(continued…)

development goals and objectives set forth in the Borough's 1997 Comprehensive Plan,[10] it was evident that the Borough intended for there to be only one medical center or hospital located in the O-P District—*i.e.*, the Jefferson Hospital. The ZHB reasoned that the Borough utilized the singular terms "hospital" and "medical center" in Section 701.1(a)(1) for the sole purpose of bringing "the existing Jefferson Hospital," which is situated on property that had previously been located within the R-1 District where a hospital was permitted as a conditional use, "into the full conformity with the Ordinance as a use by

___

> To encourage development of medical offices, medical clinics[,] and diagnostic centers ancillary to the Jefferson Hospital;
>
> To encourage other business and professional offices and supporting services in a campus[-]style setting with protections for adjoining residentially zoned properties; and
>
> To provide a compatible zoning classification to serve as a transition between residential properties and commercial properties in locations accessible to the regional highway network.

(R.R. at 149a.)

[10] Section 101.3 of the Ordinance incorporated the community development objectives set forth in the Borough's 1997 Comprehensive Plan into the Ordinance by reference. (*See* R.R. at 56a ("The zoning regulations and districts set forth in [the] Ordinance are made in accordance with the 1997 Comprehensive Plan . . . for . . . the Borough . . . , and the [c]ommunity [d]evelopment [o]bjectives of that Plan are hereby incorporated by reference.").) Those community development objectives provide, in pertinent part:

> <u>Goal</u>:     Recognize the importance of the Jefferson . . . Hospital to the Borough's economic base and encourage medical[-]related development in the future.
>
> <u>Objectives</u>:     Create a new O-P . . . District to encourage medical offices, research, clinics[,] and similar facilities in a campus-like atmosphere with design requirements that provide protections for adjacent residential areas.
>
>             Identify existing developed and future development sites for the new O-P District and offer economic incentives for their development and expansion.

(*Id.* at 348a.)

right[]" and to allow for the development of other business and professional offices "ancillary" to the Jefferson Hospital—"not to allow the development of other [h]ospitals and [m]edical [c]enters in the then newly created O-P [District]." (*Id.* at 11-12.) The ZHB further reasoned that property located within the O-P District—specifically, Lot 660-L-67—"is not suitable for intense commercial development" and, instead, should serve as a transition between the commercial zoning district located along State Route 51 and the neighboring residential properties. (*Id.* at 12.)

The ZHB next concluded that the Zoning Officer exceeded the scope of his authority under Section 614 of the MPC and Section 1201.2 of the Ordinance when he granted AUUE a use permit for the Property without first ensuring that the Zoning Application complied with all relevant provisions of the Ordinance. The ZHB reasoned:

> There is no specific authorization in the MPC or the . . . Ordinance for the Zoning Officer is [sic] issue a [u]se [p]ermit that would be conditioned on [AUUE] later complying with the provisions of the . . . Ordinance, in this case through the land development process. . . .
>
> . . . .
>
> The zoning issues relative to [AUUE's] Zoning . . . Application . . . should have been resolved by the Zoning Officer on his full review of the [Zoning] Application. If there were issues resolving compliance with provisions of the . . . Ordinance, the Zoning Officer should have rejected the issuance of the [z]oning [p]ermit until such issues were corrected by . . . AUUE . . . whether through submitting a sub[]division plan, altering [its] plans, [or] seeking variances and/or conditional uses for the portions of it[s] plans in which zoning issues had not been resolved.

(*Id.* at 15.)

Lastly, the ZHB concluded that there were numerous violations of the Ordinance apparent on the face of AUUE's Zoning Application, each of which served as a basis for it to deny the Zoning Application: (1) a portion of the proposed gated access road located on Lot 767-D-375 that would be used to connect the staff parking lot to Practice T Drive passes over property located in the R-1 District in violation of Section 201.1 of the

Ordinance; (2) the proposed parking lots located on Lots 767-D-375 and 660-S-40 constitute accessory uses without principal uses in violation of Section 102.2 of the Ordinance; (3) the proposed medical center located on Lot 660-L-67 would have no parking spaces in violation of Section 902.6(a)(9) of the Ordinance; and (4) Lots 767-D-375, 660-S-40, 767-G-200, and 767-H-14 would have no direct access to a collector or arterial road in violation of Section 701.3 of the Ordinance. The Board reasoned that, while AUUE could have resolved some of these violations by amending its proposed plans, proceeding through the subdivision and land development process, and/or obtaining relief from certain zoning requirements through a variance or approval of a conditional use, the Zoning Officer should have, nevertheless, deemed the violations to be fatal and denied AUUE's Zoning Application, rather than conditioning approval on AUUE's future compliance with the Ordinance during the land development phase—*i.e.*, issuing what essentially amounted to an advisory opinion.

AUUE appealed the ZHB's decision to the Allegheny County Court of Common Pleas (Common Pleas), which, after taking no additional evidence, affirmed the ZHB's decision. In so doing, Common Pleas deferred to both the ZHB's interpretation of the Ordinance and its analysis and concluded that the ZHB properly determined that AUUE's intended/desired use for the Property was not permitted under Section 701.1(a)(1) of the Ordinance. Determining that this conclusion was entirely dispositive of AUUE's appeal, Common Pleas declined to consider AUUE's remaining issues—*i.e.*, that the ZHB's interpretation of Section 701.1(a)(1) implicated exclusionary zoning concerns and resulted in illegal spot zoning. AUUE thereafter petitioned the Commonwealth Court for review of Common Pleas' decision.

In a unanimous, unpublished memorandum opinion, a three-judge panel of the Commonwealth Court reversed the trial court's order. The Commonwealth Court began

its analysis by concluding that the ZHB committed an error of law when it determined that AUUE's proposed medical center was not a use permitted by right in the O-P District. In so doing, the Commonwealth Court, like the ZHB, turned its attention to Section 701.1(a)(1) of the Ordinance, Article 700 of the Ordinance's Statement of Intent, Section 101.3 of the Ordinance, and the relevant community development goals and objectives set forth in the Borough's 1997 Comprehensive Plan. The Commonwealth Court also noted, however, that two additional sections of the Ordinance informed its analysis: Section 102.1[11] and Section 101.5.[12] The Commonwealth Court explained:

> These provisions, when read together, lead us to several conclusions. First, medical centers are unambiguously authorized as a *by-right* use in the Borough on properties zoned O-P. Second, though both the 1997 Comprehensive Plan and the . . . Ordinance *encourage* development that is ancillary to the existing Jefferson Hospital, the wording that is used therein does not expressly *prohibit* the construction of other hospitals or medical centers within O-P areas. Third, as the singular and the plural are interchangeable for purposes of the . . . Ordinance's terms, neither "[h]ospital" nor "[m]edical [c]enter," as used in Section 701.1(a), can be interpreted as authorizing only a single hospital or medical center in the Borough's O-P [D]istrict[]. Fourth, the "materials" referenced in Section 101.5 cannot be used to interpret the policy intent behind the . . . Ordinance in this instance, as the plain language of the . . . Ordinance both controls and establishes the by-right nature of medical facilities.

---

[11] Section 102.1 of the Ordinance provides, in relevant part, that "[t]he singular number includes the plural and the plural the singular." (R.R. at 59a.)

[12] Like Section 101.3 of the Ordinance, Section 101.5 acknowledges the relationship between the Ordinance and the Borough's 1997 Comprehensive Plan to the Ordinance. It provides:

> This Ordinance is adopted to promote an orderly plan of development according to the Borough's adopted Comprehensive Plan, including data on existing conditions, statements concerning the proposed plan and evaluations of implementation techniques. Such material shall be considered as legislative history and shall be utilized when necessary to establish policy in the interpretation of this Ordinance.

(R.R. at 57a.)

*AUUE, Inc. v. Borough of Jefferson Hills Zoning Hearing Bd.* (Pa. Cmwlth., No. 871 C.D. 2020, filed August 9, 2021), slip op. at 13 (emphasis in original). "Consequently," the Commonwealth Court reasoned that the ZHB erred by "ignoring the actual wording of the . . . Ordinance and by instead inferring that the proposed primary use for UPMC South[—]*i.e.*, a medical facility[—]was barred by implication." *Id.* at 14.

The Commonwealth Court further concluded that the ZHB should have limited its review of the Zoning Officer's decision to the question of whether AUUE's desired/intended use for the Property was permitted by right in the O-P District rather than "straying farther afield into broader concerns about the Zoning Application's overall compliance with the . . . Ordinance." *Id.* (footnote omitted). The Commonwealth Court explained that, due to the breadth of the Zoning Officer's authority under Section 614 of the MPC and Sections 1201.1(a) and 1201.2 of the Ordinance, the Borough's Zoning Officer had the power to issue a use permit, and, therefore, the "sole issue properly before the [ZHB] was whether the proposed medical facility was a use allowed by right." *Id.* at 15. The Commonwealth Court reasoned:

> Both the MPC and the . . . Ordinance establish that a zoning officer can dispense permits relating to construction on a property, as well as ones relating to a property's use. As such, the Borough's [Z]oning [O]fficer may issue a permit recognizing that a piece of land may be used in a certain, . . . Ordinance-compliant way, even if that permit does not actually authorize the applicant to commence development or resolve all extant zoning matters. Here, the Zoning Application related solely to gaining governmental approval of AUUE's desired use[] but did not pertain to the larger concern of whether the UPMC South development, as proposed, complied with *all* portions of the . . . Ordinance. As such, the [ZHB] incorrectly concluded that the Borough's [Z]oning [O]fficer could not grant a use permit to AUUE and erroneously delved into broader concerns beyond whether the [Z]oning [O]fficer properly concluded that the proposed use was allowed by the . . . Ordinance.

*Id.* at 15-16 (citations omitted).

## II. ISSUES

This Court granted discretionary review to consider the following issues, as stated by Residents:

(1) Where it is proven that a developer's zoning permit application violates the zoning ordinance, does the zoning hearing board have authority under the [MPC] and local zoning ordinance to overturn the zoning officer's issuance of a zoning permit because of those proven violations?

(2) Did the Commonwealth Court err in holding that a zoning hearing board, when considering an application for a zoning permit, cannot resolve "extant zoning matters" or review a permit application for "overall compliance["] with the zoning ordinance, but instead must ignore proven zoning ordinance violations and only answer the narrow legal question of whether a particular use is allowable as a "use by right" under a single subsection of the ordinance?

(3) Can a zoning officer, when evaluating an application for a zoning permit, ignore zoning ordinance violations apparent on the face of the developer's application and, instead, defer to elected officials to address those zoning ordinance violations at some unidentified point in the "land development process?"

(4) Does it constitute an inadmissible advisory opinion for a zoning officer, in response to a zoning permit application, to only provide a legal opinion that a particular use is allowed in a zoning district without considering any other part of the application or zoning ordinance?

*AUUE, Inc. v. Borough of Jefferson Hills Zoning Hearing Bd.*, 280 A.3d 868 (Pa. 2022) (per curiam). As these issues involve matters of statutory interpretation, our standard of review is de novo and our scope of review is plenary. *S & H Transp., Inc. v. City of York*, 210 A.3d 1028, 1038 (Pa. 2019); *City of Phila. v. City of Phila. Tax Rev. Bd. ex rel. Keystone Health Plan E., Inc.*, 132 A.3d 946, 952 (Pa. 2015).

## III. DISCUSSION

This appeal requires us to interpret Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC. Thus, we are guided in our analysis by the

Statutory Construction Act of 1972 (Statutory Construction Act).[13]  *See Borough of Fleetwood v. Zoning Hearing Bd. of Fleetwood*, 649 A.2d 651, 656 (Pa. 1994) ("[W]hen construing the terms of a local zoning ordinance, we are guided by the principles of statutory construction set forth in the Statutory Construction Act.").  The object of all statutory interpretation "is to ascertain and effectuate the intention" of the governmental body enacting the statute or ordinance, in this case, the General Assembly and the Borough.  1 Pa. C.S. § 1921(a); *see also Bailey v. Zoning Bd. of Adjustment of Phila.*, 801 A.2d 492, 502 (Pa. 2002); *S & H Transp., Inc.*, 210 A.3d at 1038.  Generally speaking, the plain language of the statute or ordinance "provides the best indication of legislative intent." *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017) (citing 1 Pa. C.S. § 1921(b)); *S & H Transp., Inc.*, 210 A.3d at 1038.  If the language of the statute or ordinance is clear and unambiguous in setting forth the intent of the governmental body, then we cannot disregard "the letter of the statute [or ordinance] under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa. C.S. § 1921(b)); *see also Bailey*, 801 A.2d at 502; *Borough of Fleetwood*, 649 A.2d at 656.  In this vein, "we should not insert words into [a statute or ordinance] that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012).

When the language of the statute or ordinance is ambiguous—*i.e.*, is subject to two or more reasonable interpretations—however, we may ascertain the governmental body's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act[14] and other rules of statutory construction.  *See Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 863 A.2d 432, 436 (Pa. 2004) (observing that "other

---

[13] 1 Pa. C.S. §§ 1501-1991.

[14] 1 Pa. C.S. § 1921(c).

interpretive rules of statutory construction are to be utilized only where the statute at issue is ambiguous"); *Bailey*, 801 A.2d at 502 ("[W]hen the words in an ordinance are not explicit, the legislative body's intent may be ascertained by considering, among other things, the ordinance's goal, the consequences of a particular interpretation of the ordinance, and interpretations of the ordinance by an administrative agency."); *City of Phila.*, 132 A.3d at 952. Moreover, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act], shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a). "We also presume that 'the [governmental body] does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the [governmental body] intends the entire statute to be effective and certain.'" *Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 245 (Pa. 2019) (quoting 1 Pa. C.S. § 1922(1)-(2)).

"[C]ourts ordinarily grant deference to the zoning [hearing] board's understanding of its own ordinance because, as a general matter, governmental agencies are entitled 'great weight' in their interpretation of legislation they are charged to enforce." *Broussard v. Zoning Bd. of Adjustment of Pittsburgh*, 907 A.2d 494, 500 (Pa. 2006); *see also* 1 Pa. C.S. § 1921(c)(8) ("When the words of the statute are not explicit, the intent of the General Assembly may be ascertained by considering, among other matters[,] . . . [l]egislative and administrative interpretations of such statute."). "The basis for [this] judicial deference is the knowledge and expertise a [zoning hearing board] possesses to interpret the ordinance it is charged with administering." *Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 976 (Pa. Cmwlth. 2009). If, however, "that interpretation is inconsistent with the plain language of the ordinance or the meaning of the ordinance is

unambiguous, the 'interpretation carries little or no weight.'" *Sabatini v. Zoning Hearing Bd. of Fayette Cnty.*, 230 A.3d 514, 521 (Pa. Cmwlth. 2020) (quoting *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007), *aff'd*, 974 A.2d 1144 (Pa. 2009)). "This is because 'a zoning [hearing] board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance.'" *Id.* (quoting *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth.), *appeal denied*, 929 A.2d 1163 (Pa. 2007)).

With these principles of construction in mind, we begin our analysis by reiterating the provisions of the Ordinance and the MPC that we are called upon to interpret. Section 1201.1(a) of the Ordinance provides, in relevant part, that the "duties of the Zoning Officer shall be . . . [t]o enforce the provisions of [the] Ordinance . . . [and] [t]o issue permits only for construction and uses which are in accordance with the regulations of [the] Ordinance and other applicable ordinances as may be subsequently amended." Section 1201.2 of the Ordinance provides that "[the] Ordinance shall be enforced by the Zoning Officer . . . . No permit of any kind as provided for in [the] Ordinance shall be granted for any purpose except in compliance with the provisions of [the] Ordinance or a decision of the [ZHB] or an [o]rder of the [c]ourt." Lastly, Section 614 of the MPC provides, in pertinent part, that "[t]he zoning officer shall administer the . . . [O]rdinance in accordance with its literal terms[] and shall not have the power to permit any construction or any use or change of use which does not conform to the . . . [O]rdinance." 53 P.S. § 10614.

As can be seen, Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC, by their plain and unambiguous terms, grant the Borough's Zoning Officer broad and expansive authority to issue permits for both construction *and uses* that are permitted by and in accordance with the Ordinance. Nothing contained within those

provisions prohibits the Zoning Officer from issuing a zoning permit that recognizes only that a proposed use is allowed by right in a particular zoning district and that leaves for another day the question of whether construction and development can proceed on the subject property. In other words, Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC do not mandate full compliance with all provisions of the Ordinance before the Zoning Officer can issue a zoning permit. Rather, the plain and unambiguous language of those provisions merely requires that the purpose for which the Zoning Officer issues the zoning permit, however limited, complies with and conforms to the Ordinance.

We cannot lose sight of the fact that, here, the Zoning Officer did not issue a building permit to AUUE for the Property or inform AUUE that it could proceed with construction on and development of the Property. The Zoning Officer, instead, issued what he referred to as a "use" permit, and, in doing so, only determined that AUUE's desired/intended use for the Property—*i.e.*, a medical center to be known as UPMC South—was a use permitted by right in the O-P District in which the Property is located. The Commonwealth Court reasonably concluded that, when the relevant provisions of the Ordinance and the Borough's 1997 Comprehensive Plan are read together, the Ordinance's plain and unambiguous language establishes that hospitals and medical centers are authorized by right in the O-P District. That conclusion was not challenged on appeal and, therefore, informs our analysis.

Synthesizing this together, we conclude that the Zoning Officer had the authority to issue a use permit to AUUE. As explained more fully above, the plain and unambiguous language of Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC grant the Zoning Officer the broad and expansive authority to issue zoning permits for any purpose, however limited, provided that such purpose

conforms to the requirements of the Ordinance. The Zoning Officer issued the zoning permit in question to AUUE for the sole and limited purpose of establishing that AUUE's desired/intended use for the Property was permitted by right in the OP-District. Indeed, the Zoning Officer's letter granting the zoning permit to AUUE specifically stated that AUUE was not relieved "of any requirements of the . . . Ordinance as part of the land development application review process" and that "[n]o development activity [could] occur on the [Property] until [AUUE] secure[d] approval for land development from the Borough." (R.R. at 445a.) Pursuant to the Commonwealth Court's reasonable and unchallenged conclusion, AUUE's desired/intended use for the Property—*i.e.*, a medical center, consisting of a hospital, a medical clinic, and medical professional offices—is a use permitted by right in the O-P District. Thus, the limited purpose for which the Zoning Officer issued the zoning permit to AUUE conforms to and complies with the requirements of the Ordinance. For these reasons, we conclude that it was within the Zoning Officer's authority pursuant to the plain and unambiguous language of Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC to issue the use permit to AUUE for the Property, even though further zoning approval and/or subdivision and land development approval may be necessary before AUUE can proceed with construction on and development at the Property. For these exact same reasons, we also hold that the Zoning Officer's decision does not amount to an impermissible advisory opinion.

In light of these conclusions, we further conclude that the ZHB was required to limit its review of the Zoning Officer's decision to the question of whether AUUE's desired/intended use for the Property was permitted by right in the O-P District. Given the limited purpose for which the Zoning Officer issued the zoning permit to AUUE and that the Zoning Officer was authorized to issue a zoning permit to AUUE for that limited purpose, the question of overall compliance with the Ordinance was not before the ZHB,

and, consequently, the ZHB was not permitted to overturn the Zoning Officer's decision simply because the Zoning Application may have failed to comply with all relevant provisions of the Ordinance.

Residents attempt to avoid these conclusions, advancing several contrary analyses. First, Residents assert, pursuant to Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC, that it is the Zoning Officer's "job to administer and enforce all the provisions of the . . . Ordinance, not just some of them," and that "the Zoning Officer cannot issue any kind of permit for any reason unless the permit application demonstrates compliance with all provisions—plural—of the . . . Ordinance." (Residents' Br. at 22, 24 (emphasis omitted).) Stated another way, Residents contend that "neither the MPC nor the . . . Ordinance carve up zoning permits into 'use permits' as opposed to regular zoning permits, much less compel a zoning hearing board to issue a 'use only' permit in the face of several other proven material violations of the . . . Ordinance." (*Id.* at 29.) Residents, therefore, suggest that the Zoning Officer's decision "amounts to nothing more than a pure advisory opinion." (*Id.* at 46.)

In making these arguments, however, Residents ignore the plain and unambiguous language of Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC. As explained more fully above, nothing within those provisions requires the Zoning Officer to, as Residents suggest, "resolve all extant zoning matters." (*Id.* at 22 (citing *AUUE, Inc.*, slip op. at 16).) Rather, the plain and unambiguous language of those provisions only requires the Zoning Officer to ensure that the purpose for which the zoning permit is issued complies with the Ordinance. Here, the Zoning Officer did exactly what he was authorized to do by Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC, as those provisions grant the Zoning Officer broad and expansive authority to issue permits for both construction *and uses* that are permitted by

and in accordance with the Ordinance. Additionally, given that broad and expansive authority, there was nothing advisory about the Zoning Officer's decision; the Zoning Officer simply issued a zoning permit for a limited purpose, as he was authorized to do.

Next, Residents maintain that, on "appeal from the Zoning Officer's decision to issue a zoning permit, the [ZHB] has the obligation (or, at minimum, the power) to address not only the 'use by right' question, but also whether the permit was erroneously issued for other reasons, including because the application does not demonstrate compliance with all the provisions—plural—of the Ordinance." (*Id.* at 24 (emphasis omitted).) Residents suggest that the Commonwealth Court's decision "improperly circumscribes the [ZHB's] authority and its substantial discretion in matters of zoning procedure." (*Id.* at 29.) In support, Residents direct our attention to Section 909.1(a)(3) of the MPC[15] and Section 1303.1 of the Ordinance.[16] Residents claim that, together, these provisions establish that the ZHB "is the only body with the authority to address the zoning challenge brought by . . . Residents" and "Residents have the right to challenge the Zoning Officer's issuance of the zoning permit based on any provision of the Ordinance, not just the singular provision that the Zoning Officer chose to apply." (*Id.* at 25, 26 (emphasis omitted).) Residents also rely on the Commonwealth Court's decision in *Bethlehem Manor Village, LLC v. Zoning Hearing Board of Bethlehem*, 251 A.3d 448 (Pa. Cmwlth. 2021), which, according to Residents, "reaffirmed the basic principle that[]

---

[15] Section 909.1(a)(3) of the MPC provides, in relevant part, that "[t]he [ZHB] shall have exclusive jurisdiction to hear and render final adjudications in . . . [a]ppeals from the determination of the [Z]oning [O]fficer, including, but not limited to, the granting or denial of any permit."

[16] Section 1303.1 of the Ordinance provides, in pertinent part, that "[t]he [ZHB] shall hear and decide appeals where it is alleged by the appellant that the Zoning Officer has failed to follow prescribed procedures or has misinterpreted or misapplied any provision of a valid ordinance or map or any valid rule or regulation governing the actions of the Zoning Officer."

'a zoning hearing board, even sitting in [its] appellate capacity, is not to engage in a narrow review of a zoning officer's decision, based only on the materials offered to the zoning officer, but is required to make findings based on the proceedings conducted before the zoning hearing board.'" (*Id.* at 26 (quoting *Bethlehem Manor Vill., LLC*, 251 A.3d at 461).)

Simply put, Residents' reliance on this authority is misplaced. Contrary to Residents' protestations, this is not a situation where the Zoning Officer chose to apply some provisions of the Ordinance while ignoring others. It is also not a situation where the Zoning Officer's decision itself failed to comply with the Ordinance. Rather, the Zoning Officer considered a singular issue—*i.e.*, whether a medical center is a use permitted by right in the O-P District—and applied the provisions of the Ordinance that were determinative of that question. As detailed above, Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC grant the Zoning Officer the authority to issue a zoning permit for that limited purpose. Given the Commonwealth Court's reasonable and unchallenged determination that a medical center is a use permitted by right in the O-P District, there is nothing erroneous about the Zoning Officer's decision and/or the zoning permit that the Zoning Officer issued to AUUE in this case. Stated more simply, the Zoning Officer's resolution of the singular issue addressed by the zoning permit complied with the Ordinance.

Additionally, as emphasized above, the only issue before the ZHB was whether AUUE's desired/intended use of the Property was permitted by right in the O-P District, and, therefore, the ZHB should have limited its review to consideration of that issue alone. Contrary to Residents' suggestions, limiting the ZHB's review of the Zoning Officer's decision in that manner in no way interferes with the ZHB's exclusive jurisdiction to hear and render final adjudications on zoning matters. In other words, while the ZHB has

exclusive jurisdiction pursuant to Section 909.1(a)(3) of the MPC and Section 1201.1(b) of the Ordinance to review the Zoning Officer's decision,[17] the ZHB does not have unfettered authority to go beyond the circumstances of the particular zoning permit issued by the Zoning Officer in order to overturn the Zoning Officer's decision. If, on the other hand, AUUE had been dissatisfied with the limited nature of the use permit that the Zoning Officer granted to it and appealed the Zoning Officer's decision to the ZHB, seeking a zoning permit that would have permitted it to proceed with construction and development of the Property, our conclusion today would be markedly different. Under those circumstances, the ZHB would have been permitted to consider whether the Zoning Application complied with all relevant provisions of the Ordinance because the issue of full compliance with the Ordinance would have been squarely before the ZHB.

Residents further contend that the Commonwealth Court's decision "runs afoul of at least three basic principles of statutory construction." (*Id.* at 31.) First, Residents maintain that the Commonwealth Court "failed to read and apply the whole Ordinance" and, instead, "read the word 'use' in a vacuum and then (like the Zoning Officer) applied only one page of the Ordinance to the [Zoning] [A]pplication." (*Id.*) Second, Residents argue that the Commonwealth Court failed to give effect to the entire Ordinance and, in doing so, rendered parts of the Ordinance mere surplusage. In support, Residents cite Section 1202.1 of the Ordinance, which provides, in relevant part, that "[a]n application for zoning approval shall state the proposed use of the structure or lot and shall include such additional information required by the Zoning Officer to determine compliance with [the] Ordinance." Residents suggest that, "[i]f the only question for [the] Zoning Officer is whether the 'proposed use' listed on the first page of the application is also listed as a

---

[17] Section 1201.1(b) of the Ordinance provides that "[a]ny appeal from a decision or action of the Zoning Officer shall be made directly to the [ZHB]."

'permitted use' in a certain zoning district, then the entire second half of that sentence is superfluous." (*Id.* at 32.) Third, Residents contend that the Commonwealth Court's decision "may lead to absurd and unreasonable results in practice" because the ZHB will be forced to ignore parts of an applicant's zoning permit application. (*Id.* at 33.) Residents further posit that, "[e]qually problematic," the Commonwealth Court's decision "pushes non[]compliant developments through the zoning process even where they violate the most fundamental zoning principles." (*Id.* at 34.)

Again, Residents' arguments are misinformed. Residents are focused on the entire contents of the Zoning Application when they should be focused on the limited purpose for which the Zoning Officer issued the zoning permit to AUUE. Viewed properly, the Zoning Officer did not, as Residents suggest, fail to read and apply the whole Ordinance, because the entire Ordinance was not relevant to the question of whether a medical center was a use permitted by right in the O-P District. Indeed, the Zoning Officer applied only those provisions of the Ordinance that were necessary and relevant to determine whether to issue a use permit to AUUE. Additionally, the Zoning Officer's issuance of that permit does not render parts of Section 1202.1 of the Ordinance superfluous. Section 1202.1 requires, in pertinent part, that the zoning application "include such additional information required by the Zoning Officer to determine compliance with [the] Ordinance." We reiterate that "compliance" does not necessarily mean overall compliance with the Ordinance; rather, it means compliance with the provisions of the Ordinance that are relevant to the limited purpose for which the zoning permit is issued. It is completely irrelevant that additional, unnecessary information may be attached to the zoning permit application.

Moreover, nothing about our decision today relieves AUUE from its obligation to comply with all relevant provisions of the Ordinance and/or pushes a noncompliant

development through the zoning process. We are simply acknowledging that, due to the limited nature of the Zoning Officer's decision and the zoning permit that he issued to AUUE in this case, the proposed project's overall compliance with the Ordinance must be resolved at a later time if AUUE chooses to move forward with the approved use. In other words, contrary to Residents' assumptions, before AUUE can begin development of the Property, AUUE must demonstrate that its proposed medical center complies with all aspects of the Ordinance, whether through the subdivision and land development process, which could possibly alleviate some or all of the zoning concerns, or whether further zoning approval will be necessary.

Residents further argue that, "[e]ven if this Court could interpret the . . . Ordinance as giving the Zoning Officer or [ZHB] the option to issue a 'use permit' and/or defer [AUUE's] noncompliant [Zoning] [A]pplication to the Borough . . . , this Court should affirm the [ZHB's] reasonable decision not to do so." (*Id.* at 35 (emphasis omitted).) More specifically, Residents maintain that, "considering the plain language of the Ordinance (especially the prohibition against issuing a permit except in 'compliance with the provisions'—plural—of the Ordinance), the [ZHB's] 'exclusive' and 'final' jurisdiction over zoning permit issues, and the uncontested evidence that (outside of the 'use' question) [AUUE's] application did not comply with the . . . Ordinance, the [ZHB's] decision to overturn the zoning permit is certainly 'well-considered,' reasonable, and entitled to deference." (*Id.* at 36 (emphasis omitted).) While it may be true that courts would ordinarily grant deference to the ZHB's interpretation of the Ordinance, it is also true that, when that interpretation is inconsistent with the plain and unambiguous language of the Ordinance, that interpretation carries little, if any, weight. *See Broussard*, 907 A.2d at 500; *Sabatini*, 230 A.3d at 521. As detailed more fully above, the plain and unambiguous language of Sections 1201.1(a) and 1201.2 of the Ordinance grant the

Zoning Officer the broad and expansive authority to issue zoning permits for any purpose, however limited, provided that such purpose conforms to the requirements of the Ordinance. This includes the authority to issue a use permit for the sole purpose of recognizing that a desired/intended use is allowed by right in a particular zoning district. The ZHB's interpretation of the Ordinance is at odds with this plain and unambiguous language, and, therefore, it is not entitled to deference from this Court. *See Sabatini*, 230 A.3d at 521.

Lastly, Residents argue that, by allowing the Zoning Officer to abdicate his duty to ensure that the Zoning Application complied with all aspects of the Ordinance, the Commonwealth Court "erase[d] the distinction between zoning and land development and improperly allow[ed] for the legislative body to enforce zoning laws." (Residents' Br. at 38.) In other words, Residents suggest that the Commonwealth Court's decision "takes zoning issues away from the appointed professionals who are required to enforce [zoning] laws" and "allows zoning officers (and requires zoning hearing boards) to engage in an impermissible reverse delegation of power—that is, to give powers back to the legislature merely by disclaiming responsibility for deciding zoning issues." (*Id.* at 40 (emphasis omitted).) Residents further maintain that the ZHB's decision, which, according to them, relies exclusively on the Ordinance, not the Borough's SALDO, "properly adheres to the 'dual tracks' of land development in Pennsylvania." (*Id.* at 41.) Residents posit that, "[w]hile local ordinances may give developers flexibility as to the order in which they pursue these dual tracks, there is no authority . . . for the proposition that the subject matter of each of the dual tracks is interchangeable." (*Id.* at 42-43.) Residents suggest that, "if the Zoning Officer's decision stands, then [AUUE] will have successfully undermined the public's ability to even reasonably (and meritoriously) challenge the numerous zoning violations apparent on its [Zoning] [A]pplication." (*Id.* at 44-45.)

Residents' arguments are again misplaced. Nothing about the Commonwealth Court's decision or our decision today absolves AUUE from its obligation to comply with the Ordinance or shifts responsibility for determining potential zoning violations to the Borough—*i.e.*, the legislative body—during the subdivision and land development process. Rather, in light of the limited nature of the zoning permit that the Zoning Officer issued to AUUE and the Zoning Officer's authority to issue such a permit pursuant to the plain and unambiguous language of Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC, we have simply left the question of overall compliance with the Ordinance for another day. Indeed, if any violations of the Ordinance remain following the completion of the subdivision and land development process, AUUE will need to correct those violations through either revisions to its proposed plans or relief from the Ordinance's requirements. At this juncture, we have no way of knowing whether further zoning approval will be necessary; for all we know, AUUE may even choose to abandon the project altogether. What we do know is that the zoning permit does not authorize AUUE to move forward with the actual development depicted in the proposed plans attached to the Zoning Application. (*See* Zoning Officer's Decision; R.R. at 445a-46a.)

In sum, we conclude that, pursuant to Sections 1201.1(a) and 1201.2 of the Ordinance and Section 614 of the MPC, the Zoning Officer had the authority to issue a use permit—*i.e.*, a zoning permit that simply recognized that AUUE's desired/intended use for the Property was permitted by right in the O-P District in which the Property was situated—to AUUE, even though, on its face, the Zoning Application may have failed to comply with all relevant provisions of the Ordinance. We further conclude that the ZHB was required to limit its review of the Zoning Officer's decision to the sole issue before it—*i.e.*, whether AUUE's desired/intended use was allowed by right in the O-P District— and was not permitted to overturn the Zoning Officer's decision simply because the

Zoning Application may have failed to comply with all relevant provisions of the Ordinance. Accordingly, we affirm the Commonwealth Court's order.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Mundy join the opinion.